## SMITH *v.* STATE.

Decided December 19, 1891.

1.  *Evidence—Insanity—Homicide.*

On a trial for murder where defendant's sanity was put in issue evidence is
admissible on behalf of the State that defendant had stated that he had
once before killed a man, set up insanity as a defense and been acquitted ;
but evidence on defendant's behalf that he had once killed a man and
been discharged, and that the defense of insanity was not interposed, is
inadmissible, in the absence of anything to connect the two cases.

2.  *Homicide—Uncontrollable impulse.*

Upon the defense of insanity a witness may not testify his belief that, while
able to discriminate right from wrong, defendant had not sufficient men-
tal power to control his actions, if there was no evidence tending to show
that his inability arose from mental disorder ; the fact that he was con-
trolled by overmastering anger or revenge would not have excused him.

3.  *Instruction—Province of jury—Pardoning power.*

*It seems* that an instruction as follows : " The court charges you that the
jury has no right to pardon any one for any offense whatever ; and if you
are satisfied beyond a reasonable doubt that the defendant is guilty in
manner and form as charged in the indictment, then it would be a gross
violation of your duty as sworn jurors to acquit him through sympathy or
a spirit of condonation of his offense "—is misleading.

4.  *Insane delusion—Homicide.*

Where, in a murder trial, the court upon proper evidence charged that " an
insane delusion relieves a person from responsibility when and only when
the fact or state of facts believed in, under the insane delusion, would, if
actually existing, have justified the act," it was error to refuse to give a
further instruction, asked by defendant, defining what facts, if real, would
have justified the killing.

APPEAL from *Franklin* Circuit Court, Ozark District.

HUGH F. THOMASON, Judge.

*George A. Mansfield* for appellant.

Argued the case orally.

1.  The third instruction asked for defendants should. have been given.  It states the law and was supported by evidence.  *It was his defense.*  Buswell on Insanity, secs. 431, 433; Lawson's Cr. Def., p. 107; Bish., Cr. Law., vol. 1,. sec. 392, and note 7.

2.  It was error to permit the opening statement of the prosecuting attorney, and introduce Martin to prove it, and then refuse to allow defendant to disprove it by Gurley.

3.  The evidence totally fails to support the verdict, but. points irresistibly to the truth of the facts stated in the third. instruction asked.

4.  No motive was shown for the killing.  And taking the: whole evidence, it is clear his defense was made out.

*W. E. Atkinson,* Attorney General, and *Charles T. Cole-man* for appellee.

1.  The instructions are mostly from the digest, secs. 1517 to 1522, 1549, 1551 and 1552; and the others approved in. 40 Ark., 511; 50 *id.,* 511; and 16 S. W. Rep., 658.

2.  The third instruction asked for defendant is adroitly drawn, but is unsound and liable to mislead.  16 S. W. Rep., 658; 10 Cl. & F., 200.

3.  The question asked Smith on re-cross examination, was proper under the circumstances.  28 Tex. App., 151;. 12 Ohio, 483.

4.  There was no proper foundation laid for the question put to King.  He had not stated the facts within his knowl-edge.

5.  Evidence of the reputation of being insane is not ad-. missible.  58 Ga., 296; 2 Bish., Cr. Proc., sec. 687 (*a*).

HEMINGWAY, J.  The defendant was indicted for murder in the first degree, and sought to excuse the homicide upon. the ground of his insanity at the time of its commission. There was evidence tending to prove that at the time of the homicide, and for several years before, he was subject to de-

lusions under the influence of which he believed that a con-
spiracy had been formed to kill him; that on the morning
of the homicide he was in a state of great alarm, and sum-
moned the sheriff to protect him against an apprehended
attack; that he believed the deceased to be a party to the
conspiracy, and that he had arrived in advance of his asso-
ciates to accomplish their purpose.  The undisputed fact
was that at the time of the homicide the deceased was
seated quietly at the house of the defendant, making no
demonstration of violence, and that there had never been
any difficulty between them; but the evidence tended to
prove that the defendant believed that the deceased was
about to kill him, and that he acted under the belief that it
was necessary to kill the deceased to save his own life.  We
only state that there was evidence of the facts above set
out, which made a charge upon that state of case proper.
The weight of such evidence is a matter for a jury, and the
statement above indicates no opinion in reference thereto.

The State introduced, against defendant's objection, state- **1. Evidence as to insanity.**
ments made by him to the effect that he had once before
killed a man, set up insanity as a defense and been acquitted;
and excluded evidence offered by the defense to show that
he had killed a man and been discharged, and that he did
not interpose the defense of insanity.  We think the proof
admitted was relevant to the issue, and proper to be con-
sidered by the jury in determining whether the homicide
was committed under the influence of an existing or of a
feigned delusion.  If the testimony offered by the defend-
ant related to the killing spoken of in the statement proved,
we think it should have been admitted; but in the absence
of anything to connect them, we think the testimony offered
was irrelevant and properly excluded.

The defense propounded to a witness the following ques- **2. Emotional insanity not a defense.**
tion:  "From all you saw and observed while he (defend-
ant) was confined, do you believe that he had sufficient
mind to discriminate between right and wrong in reference
to his act of shooting Stevens?  Or, if he could so discrim-

inate right from wrong, do you believe that he had suffi-
cient mental power to control his actions?" The witness
had detailed what he had seen and observed in the conduct
of the defendant, as the basis of the opinion he was asked
to express. He should, therefore, have been permitted to
answer so much of the question as related to the mental
competency of the defendant to distinguish between right
and wrong in reference to the homicide. There was no evi-
dence tending to show that the defendant could discriminate
right from wrong, but from mental disorder could not con-
trol his actions; and the fact that he was controlled by
overmastering anger or revenge would not have excused
him. We think, therefore, that the latter part of the ques-
tion should not have been answered. *Bolling* v. *State*, 54
Ark., 588. It would serve no useful purpose for us to com-
ment upon the many and cruel outrages upon justice that
have been perpetrated in the name of emotional insanity.
The fact is within the observation of all, and its effects have
prejudiced none more than the unfortunate members of so-
ciety who are in fact bereft of reason. It has no place as a
defense in the laws of this State.

3. Instruction as to pardoning power disapproved.

The court is constrained to express its disapproval of the
twentieth instruction given on behalf of the State, without
expressing an opinion as to the extent or effect of the error
in giving it. Instructions are intended to enlighten the jury
and guide them to correct legal conclusions upon the facts
they shall find. There is no popular belief that a jury has
the pardoning power, and the jury could not have believed
that the law gave it such power, or that its usurpation would
not be a gross violation of duty. To declare such princi-
ples was wholly unnecessary, and an instruction couched in
the language of this one is liable to be misconstrued and
improperly influence the jury.*

4. Instructions as to insane delusions discussed.

The court, at the request of the State, charged the jury
as follows: "An insane delusion relieves a person from re-
sponsibility when and only when the fact or state of facts

*The instruction is copied in the third head-note to this case.—REPORTER.

believed in under the insane delusion would, if actually existing, have justified the act." This correctly announces a legal principle, but was incomplete in not announcing what facts, if real, would have justified the act. *Bolling* v. *State*, 54 Ark., *supra*.

The defense, desiring that a complete instruction covering this phase of the case be given, asked the court to charge as follows: " If the jury find from the evidence that the defendant at the time he fired the fatal shot was acting under a delusion, although able to distinguish between right and wrong, and believed that the deceased and others had formed a plot to take away his life or do him some great bodily injury, and that the deceased had an immediate design to so do, and that it was necessary for him to fire the shot to protect his life or prevent his receiving great bodily injury, they must acquit."

The court declined to give this instruction, and gave none to cover it except the one above. The legal principle announced in this instruction is the same as that in the one given ; but the one given does not cover the one refused because it is general, while the latter states the application of the principle to this case. The State explains the court's action, first, upon the ground that the instruction refers to a delusion generally, and does not restrict its application to an insane delusion. The court had by a former instruction defined an insane delusion, and it was perfectly obvious that no other was intended in this instruction. It is next insisted that the instruction is erroneous because it does not declare that a defendant can justify a killing on the ground of self-defense only when the deceased was in the act of killing him or doing him some great bodily injury, and reliance is placed upon a clause from the opinion in Bolling's case, *supra*. But this clause was not intended to state a rule, but to illustrate one already stated ; we said that a defendant could excuse a homicide committed when the deceased was in the act of taking his life, but did not say that it could be excused under no other circumstances. We also stated by

way of illustration a case in which the homicide would not be excused, but did not indicate that in all other cases it would be excused.

The statute does not use the language contended for; but where the circumstances otherwise exist, it provides that a homicide may be justified where it is necessary to save one against urgent and pressing danger. Mansf. Dig., sec. 1553.

By the instruction asked it was declared that the right to kill in self-defense would have existed "if the deceased and others had formed a plot to take away his (the defendant's) life and the deceased had an immediate design to do so, and it was necessary for him (the defendant) to fire the shot to protect his life." It is clearly stated that the right would not exist unless the homicide was necessary to protect the defendant's life, and it further appears that it must have been against one who had a design to take his life. It does not say that the danger of executing the design should have been urgent and pressing, but does say that the design must be immediate. This must be taken as a meaning that the design must be immediately to kill; otherwise the word "immediate" would have no meaning. If there was a fixed design to kill immediately, and this made the homicide necessary in order to protect life against impending danger—and these requirements enter into the instruction—then the danger was urgent and pressing and warranted immediate resistance. The instruction ought to have followed the statute, and in departing from it discloses verbal inaccuracies; but as intended and understood it properly declared the law applicable to this case, and the court should have corrected the verbal inaccuracies and given it.

Objection is made to other instructions given for the State, but we find in them no substantial error; and if the court had given the instruction last considered its charge would have covered the law of the case.

In view of the number and extent of the instruction asked, we wonder that the court's action was so nearly correct,

but for the error in refusing the instruction we have considered, the judgment must be reversed and the cause remanded.