Argued June 29, decided July 12, 1910.

## STATE *v.* ROSELAIR.

[109 Pac. 865.]

CRIMINAL LAW—EVIDENCE—ADMISSIBILITY OF CONFESSIONS.

1. A confession to be admissible must have been voluntarily made, and if extorted by threats or induced by a promise of immunity, or prompted by an assurance of mitigation of punishment, it is inadmissible.

CRIMINAL LAW—TRIAL—PROVINCE OF COURT AND JURY—EVIDENCE OF
          CONFESSION.

2. The court must determine as a preliminary matter, from the testimony as to the manner of execution of an alleged written admission whether or not it is competent, and, if it is found competent, the confession is then detailed or read to the jury who are exclusive judges of its weight and value.

CRIMINAL LAW—RECEPTION OF EVIDENCE—PRELIMINARY PROOF AS TO
          CONFESSION.

3. Where, to facilitate the dispatch of business, the court permitted preliminary proof as to the admissibility of a competent confession to be given but once in the hearing of the jury, its action was a matter of discretion which was not abused, and it was not error to deny a request to receive such proof in the jury's absence.

CRIMINAL LAW—EVIDENCE—OPINION OF MEDICAL EXPERT.

4. A qualified physician may be allowed to assert an opinion from examination of accused subsequent to the crime as to whether or not he was sane or insane at time of the offense.

CRIMINAL LAW—EVIDENCE—OPINION OF MEDICAL EXPERT.

5. A medical expert who has personally examined another to determine his capacity to execute a contract or his responsibility for commission of a crime, may express an opinion as to his mental condition at the time of the offense, over the objection that such question was for the jury.

CRIMINAL LAW—EVIDENCE—OPINION OF MEDICAL EXPERT.

6. It was not error to permit a medical expert who had personally examined accused and observed his mental condition to state whether he knew right from wrong, and appreciated the consequence of his acts and the nature and quality thereof.

CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—INSANITY.

7. In cases of derangement, indications of infirmity frequently manifest themselves after a paroxysm of dementia, and for this reason evidence of recurring symptoms is admissible after the commission of an act asserted to have been perpetrated while laboring under mental exaltation or depression.

From Washington: JAMES U. CAMPBELL, Judge.

The defendant, John D. Roselair, was tried and convicted of the crime of having killed his wife, and the jury

having found him guilty of murder in the first degree, he appeals from the judgment and sentence following such conviction.    AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. John A. Jeffrey* and *Mr. Charles E. Lenon.*

For the State there was a brief and oral arguments by *Mr. Edmund B. Tongue* and *Mr. Thomas H. Tongue, Jr.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The defendant, John D. Roselair, was convicted of murder in the first degree, alleged to have been committed May 15, 1909, by killing his wife; and he appeals from the resulting judgment. He made a written confession which states in effect that on the day of the homicide he requested the deceased to give him some milk for his breakfast; that complying, she poured some milk from a pan into a bowl for him, but retained the cream with a spoon; that he chided her for giving him such inferior food, whereupon she made an angry reply and threw the contents of the pan at him; that with a large knife he struck at the pan, but, missing it, wounded her upon the neck and hands; that she, stooping, placed her arms over her head, and he, discovering she could not survive, killed her with the weapon to relieve her misery; that he burned the stained clothing, and washed the blood from the floor, but left thereon the milk to show that she had cast it at him. This declaration was admitted in evidence, but it is maintained that an error was committed in receiving in the presence of the jury, over objection and exception, proof as to the competency of the confession. It is argued that as the court was required to determine this question before the confession could have been received in evidence, the defendant had the right to demand that the preliminary proof in relation thereto should have been taken in the absence of the

jury. When, in a criminal action, the State proposes to offer in evidence an alleged confession which it is asserted the defendant has acknowledged, it must appear that such admission was voluntarily made. If it was extorted by threats, or induced by a promise of immunity from the penalty prescribed for the crime, or prompted by an assurance of a mitigation of the punishment, the confession is inadmissible.

2. As a preliminary matter the court must determine from the testimony relating to the manner of the execution of the alleged admission, whether or not it is competent. If this question is answered in the affirmative, the confession is then read or detailed to the jury, who are the exclusive judges of its weight and value as evidence.

In *Ellis* v. *State,* 65 Miss. 44, 48 (3 South. 188: 7 Am. St. Rep. 634), cited by defendant's counsel, it was held that in order to render a defendant's confession admissible in evidence, the trial court, if so requested, was required to hear, in the absence of the jury, testimony, and to determine therefrom whether or not the admission of alleged participation in the commission of the crime was voluntarily made. Mr. Justice ARNOLD, in rendering the decision, says: "After a confession has been admitted by the court, either party has a right to produce before the jury the same evidence which was submitted to the court when it was called upon to decide the question of competency and all other facts and circumstances relevant to the confession, or affecting its weight or credit as evidence; and if it should be made to appear at this point, or any other, during the progress of the trial, that the confession was made under such circumstances as to render it incompetent as evidence, it should be excluded by the court." In that case no request appears to have been made that the preliminary proof as to the competency of the confession should be received in the absence of the jury. The remark just repeated was there-

fore *obiter* and entitled to consideration only as a matter of argument.

3. In *Carter* v. *State,* 37 Tex. 362, 363, another case to which attention is called by defendant, it is said:

"Whether evidence is competent to be admitted on the trial of a cause is a question of law which must be determined by the court; and, if it can be possibly avoided, evidence which it is probable may be ruled out, or which is in fact ruled out, should not be heard or discussed in the presence of the jury."

If the doctrine last quoted is controlling in the case at bar, no error was committed, for the confession was received in evidence, and it is not suggested that the same was not voluntarily made. It is impossible to see how the defendant could have been prejudiced by the action of the court of which he complains. If, in the absence of the jury, the preliminary proof had been received, and, from a consideration thereof, the conclusion had been deduced that the confession was made under such circumstances as to entitle it to be given in evidence, it would have been necessary, if demanded, to repeat the antecedent testimony when the jury were recalled. To facilitate the dispatch of business, the court permitted such testimony to be given but once, and in the hearing of the jury. Its action in this respect as we view it, was a matter of discretion which was not abused, and hence in denying the request no error was committed.

4. The special defense interposed was the defendant's alleged insanity, in support of which testimony was given by nonexpert witnesses who appeared for him. The State, in rebuttal, called Dr. A. B. Bailey, who testified that two or three days after the homicide he made an examination of the defendant to ascertain his mental condition, and concluded from such observation that he was sane. He then was asked by the district attorney: "What would you say as to whether or not he knew right from

wrong, and appreciated the consequences of his acts and the nature and quality of his acts? An objection to the question on the ground that it was irrelevant, incompetent, and immaterial having been overruled and an exception allowed, the witness replied: "I considered he knew right from wrong, and realized the consequences of his act." It is contended that the duty of determining whether or not the defendant could distinguish between right and wrong devolved on the jury, whose functions were erroneously usurped by permitting the medical expert to decide that question for them.

"When a person," says Mr. Justice THAYER in *State* v. *Murray,* 11 Or. 413, 415 (5 Pac. 55, 57), "is charged with the commission of a crime, he is entitled under the law to interpose as a defense a plea of insanity—that is, an unsoundness of mind, a derangement of intellect—and if it be established upon the trial that the accused, at the time of the commission of the act was laboring under such a defect of reason as not to know that the nature and quality of the act he was doing was wrong, the defense will be made out; but if it appears that the accused, although suffering from mental derangement, had capacity and reason sufficient to enable him to distinguish between right and wrong, as to the particular act he did; that he had a knowledge and consciousness that it was wrong and criminal and would subject him to punishment, the defense will fail."

The line of demarcation between sanity and insanity is so indistinct, in some instances, that it is difficult accurately to be determined even by a physician. It is also perplexing for a medical expert to explain the extent of mental infirmity, or to elucidate the degree of intellectual strength so that a person unacquainted therewith may gain a correct idea of the capacity or responsibility of a person whose particular act is the subject of judicial inquiry. Thus in *Choice* v. *State,* 31 Ga. 424, 466, Mr.

Justice LUMPKIN, illustrating this principle, says: "But the question in all such cases is, not which is the most reliable evidence, but the inquiry is, shall the witnesses be restricted, in their testimony, to a simple statement of facts coming within their knowledge, leaving the jury to draw an inference of sanity or insanity, or may the judgment of the witnesses, founded on opportunities of personal observation, be also laid before the jury, to assist them in forming a correct conclusion? One who has seen and conversed with an insane person, and observed his countenance and behavior, has an impression made upon his mind which is incommunicable." In order, therefore, to adapt the language of a witness to the understanding of men of ordinary intelligence, courts have permitted answers to be given which would seem almost to trench upon an issue that the jury were called upon to determine. It must be admitted that a conflict of judicial utterance exists in respect to this manner of proving a relevant fact. We believe that the rule adverted to, though founded in necessity, is fortified by reason and supported by authority. Thus, inquiries calling for opinions respecting the capability of a person charged with the commission of a crime, to distinguish between right and wrong, have been permitted to be answered by witnesses called for that purpose: *Powell* v. *State,* 25 Ala. 21; *Clark* v. *State,* 12 Ohio 483 (40 Am. Dec. 481); *United States* v. *Guiteau,* 1 Mackey (D. C.) 498 (47 Am. Rep. 247); *Smith* v. *State,* 55 Ark. 259 (18 S. W. 237); *Shaeffer* v. *State,* 61 Ark. 241 (32 S. W. 679); *State* v. *Porter,* 34 Iowa 131; *Pflueger* v. *State,* 46 Neb. 493 (64 N. W. 1094); *Webb* v. *State,* 9 Tex. App. 491; *Johnson* v. *State,* 10 Tex. App. 571.

5. It will be remembered that Dr. Bailey's conclusion as to the defendant's mental status was based on an inspection of the accused two or three days after the homicide. The rule is well settled that a medical expert

who has made a personal examination of another, for
the purpose of determining his capacity to execute a con-
tract, or his responsibility for the commission of a crime,
may express an opinion as to the mental condition of such
person at the time of the investigation: *Burt* v. *State,*
38 Tex. Cr. R. 397 (40 S. W. 1000: 43 S. W. 344: 39
L. R. A. 305) ; *People* v. *Wood,* 126 N. Y. 249 (27 N. E.
362) ; *People* v. *Youngs,* 151 N. Y. 210 (45 N. E. 460) ;
*State* v. *Maier,* 36 W. Va. 757 (15 S. E. 991).

6. A qualified physician may be allowed by a court to
assert an opinion from an examination made of a defend-
ant subsequent to the commission of a crime as to whether
or not the person accused thereof was sane or insane at
the time the offense was perpetrated: *Freeman* v. *People,*
4 Denio (N. Y.) 9 (47 Am. Dec. 216) ; *McAllister* v. *State,*
17 Ala. 434 (52 Am. Dec. 180) ; *Murphy* v. *Common-
wealth,* 92 Ky. 485 (18 S. W. 163) ; *People* v. *Kemmler,*
119 N. Y. 580 (24 N. E. 9).

7. In *State* v. *Hansen,* 25 Or. 391, 396 (35 Pac. 976,
977), it is said:

"It is within the discretion of the trial court to admit
evidence upon the question of the sanity of the person
accused, at the time of committing an offense, and of his
acts, conduct, and habits at a subsequent time which
would fairly justify any inference of insanity relating
back to the time of the alleged offense."

It was there intimated that the opinion of a nonexpert
witness, respecting the mental condition of the defendant
on the day after a homicide with which he was charged,
could not have prejudiced the accused. In that case the
mental infirmity relied upon was attributed to the exces-
sive use of alcoholic liquors. When the intoxication had
ceased the person addicted to the habit might not show
the symptoms of its use unless it had been long continued.
In cases of derangement, however, the indications of the
infirmity frequently manifest themselves for some time

after a paroxysm of dementia, and for this reason evidence of recurring symptoms is admissible after the commission of an act asserted to have been perpetrated while laboring under a state of mental exaltation or depression. From such testimony the jury are authorized to deduce an inference as to whether or not the act in question resulted from a mind that was disordered. We believe that no error was committed in permitting the medical expert who made a personal examination of the defendant, and observed his mental condition, to answer the question propounded to him.

An exception having been taken to the court's refusal to give the following instruction, it is insisted that an error was committed in denying the request, to wit:

"You are hereby instructed that there is no testimony herein to warrant a verdict against the defendant of guilty of murder in the first degree, and all question as to his guilt of the crime of murder in the first degree is hereby withdrawn from your consideration."

The bill of exceptions states, in effect, that no evidence was introduced at the trial tending to show deliberation or premeditation, except the defendant's written confession and oral statements claimed to have been made by him to witnesses who detailed the same, and the evidence of twelve persons whose names are given. The bill of exceptions does not purport to contain all the evidence, and the recital therein, to which attention has been called, does not necessarily disclose the absence of all testimony on the subject mentioned.

Believing that the defendant had a fair and impartial trial and was justly convicted of an atrocious crime, the judgment is affirmed.                     AFFIRMED.