## WOODALL *v.* STATE.

### Opinion delivered May 30, 1921.

1. CRIMINAL LAW—OPINION AS TO ACCUSED'S SANITY.—It was not error, in a murder case, to refuse to permit a non-expert witness to give her opinion as to accused's sanity until the witness should state the facts upon which her opinion was based.

2. HOMICIDE—INSANITY AS DEFENSE.—Where one is on trial for murder in the first degree, and the State proves the killing under circumstances that would constitute murder in the first degree if the homicide was committed by a sane person, then if the killing is admitted and insanity is interposed as a defense, such defense can not avail unless it appears from a preponderance of the evidence, *first*, that at the time of the killing the defendant was under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing; or *second*, if he did know it, that he did not know that he was doing what was wrong; or, *third*, if he knew the nature and quality of the act and knew it was wrong, that he was under such duress of mental disease as to be incapable of choosing between right and wrong as to the act done, and unable, because of the disease, to resist the doing of the wrong act, which was the result solely of his mental disease.

3.  HOMICIDE—EMOTIONAL OR MORAL INSANITY.—One accused of murder who is otherwise sane will not be excused because the killing was committed while his reason is temporarily dethroned, not by disease but by anger, jealousy or other passion; nor will he be excused because he has become so morally depraved that his conscience ceases to control or influence his actions.

4.  CRIMINAL LAW—DELUSIONAL INSANITY.—The rule that where one labors under partial insanity only, and is in other respects sane, he must be considered in the same situation as to responsibility as if the facts with respect to which the delusion exists were real, is limited in its application solely to those cases in which the testimony proves, or tends to prove, that the disease is in its first or earliest stage of development; but where the disease has progressed or evoluted to its second or persecutory stage, or to subsequent stages, and its form and hallucinations are such as to indicate that its victim, because of the disease, is no longer able to control his will and actions, then the defense of insanity is available, though he knows the nature and quality of his act and that it is wrong.

5.  CRIMINAL LAW—QUESTIONS OF LAW AND FACT.—Where the defense of insanity is interposed, it is an issue of fact for the jury to determine whether the accused at the time of the alleged act was afflicted with a mental disease, and an issue of law whether the mental disease is such as to render him irresponsible.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; reversed.

*J. N. Rachels* and *G. G. McKay,* for appellant.

The court erred in permitting the witness, Mrs. Woodall, to answer the question propounded to her, and in its instructions to the jury both in giving and refusing. No. 3 given for the State was abstract, misleading, prejudicial and erroneous. It was also error to refuse instructions Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 19, which are the law of this case.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

1.  There was no error in refusing a continuance, as refusing a motion for continuance is a matter addressed to the sound discretion of the court.  97 Ark. 643; 102 *Id.* 513; 105 *Id.* 698; 109 *Id.* 407.  The motion was not made a ground for motion for new trial.  40 Ark. 114.

2.  There was no error in refusing to permit Mrs.
Woodall to answer the questions asked her.  She did not
qualify by showing her relation, acquaintance, knowledge,
information, etc.  Besides appellant got the full benefit
of her testimony and can not complain.  The error of ex-
cluding statements of a witness will not be considered on
appeal if appellant did not offer to show what the state-
ment was.  88 Ark. 562; 87 *Id.* 123; 133 *Id.* 599.

3.  No exceptions were saved to the instructions nor
carried into the motion for new trial, and on appeal all
such objections will be treated as waived or abandoned.
73 Ark. 455; 105 *Id.* 253; 132 Ark. 596.

4.  Written instruction No. 4 is a correct statement
of the law of necessity as a defense as was also Nos. 5 and
6, 8, 10, etc.  54 Ark. 588; 55 *Id.* 259; 54 *Id.* 588.

Appellant had a fair and impartial trial, the evidence
fully sustains the verdict and there were no errors of law.

WOOD, J.  The appellant was indicted for the crime
of murder in the first degree in the killing of L. S. Rudi-
sill.  He entered a plea of not guilty, and the only de-
fense offered was insanity.  He was convicted of mur-
der in the second degree, and, from a judgment sentencing
him to a period of twenty years in the State peniten-
tiary, he appeals.

*First.*  Mrs. R. S. Woodall testified that she was the
mother of the appellant.  The record shows that during
the progress of her examination the following took
place:

"Q.  Was he (Lee Woodall) at the time of the kill-
ing, and had he been for some time prior thereto, on the
subject of his trouble with L. S. Rudisill sane or insane?

*Mr. Miller* (prosecuting attorney):  I object on the
ground that the witness has not detailed any of the facts
and circumstances sufficient to express an opinion.

*Court:*  The objection will be sustained to it; I don't
think she has detailed sufficient facts and circumstances
to testify as to that.

*Mr. Rachels* (attorney for defendant): We might as well settle this.

*Court:* I am familiar with the decision, and it is not necessary to argue the matter; I have ruled on it and you can save your exceptions.

*Mr. Rachels:* Note my exceptions. He objects to my qualifying the witness.

*Mr. Miller:* No, I do not.

*Court:* She has not detailed facts sufficient to justify her in expressing an opinion as to his sanity, yet she may be able to do so after while."

The record shows that, after the above ruling, Mrs. Woodall was examined at length and testified in detail as to the appellant's conversation with her concerning his trouble with Rudisill and his manner during such conversation, showing what appellant said and did and how his mind was affected. At the conclusion, she was asked:

"Q. I believe you said awhile ago that upon the question of his trouble with Rudisill he was insane?

A. He was."

Counsel for appellant contends here that the court erred in not permitting the witness during the early part of her examination to answer the question propounded to her as above set forth. The ruling of the court at that juncture was correct. For at this time the witness had not detailed sufficiently the facts upon which she based her opinion. The record shows that the witness later during her examination fully stated facts upon which her opinion was based and was permitted to express the opinion that on the subject of his trouble with Rudisill, appellant was insane. The ruling of the court was in conformity with the rule announced by this court in *Bolling* v. *State,* 54 Ark. 588-598-599; *Smith* v. *State,* 55 Ark. 259-62; *Schumann* v. *State,* 106 Ark. 362; *Dewein* v. *State,* 120 Ark. 302-311; *Hankins* v. *State,* 133 Ark. 38-63.

*Second.* The appellant next contends that the court erred in its ruling in giving certain instructions on its own motion and in refusing prayers of appellant for instructions on the issue of insanity. The court, on its own motion, gave fourteen instructions on this issue, and it appears that counsel for appellant presented nineteen prayers for instructions on the same issue, which the court refused.                                            :

In *Bell* v. *State,* 120 Ark., at page 553, this court, having under consideration rulings of the trial court in giving and refusing prayers for instructions on the issue of insanity where the crime charged was murder in the first degree, announced the law as follows: "Where one is on trial for murder in the first degree, and the State proves the killing under circumstances that would constitute murder in the first degree if the homicide was committed by a sane person, then, if the killing is admitted and insanity is interposed as a defense, such defense can not avail unless it appears from a preponderance of the evidence, first, that at the time of the killing the defendant was under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing; or, second, if he did know it, that he did not know that he was doing what was wrong; or, third, if he knew the nature and quality of the act, and knew that it was wrong, that he was under such duress of mental disease as to be incapable of choosing between right and wrong as to the act done, and unable, because of the disease, to resist the doing of the wrong act which was the result solely of his mental disease." * * *

"But it must be remembered that one who is otherwise sane will not be excused from a crime he has committed while his reason is temporarily dethroned not by disease, but by anger, jealousy or other passion; nor will he be excused because he has become so morally depraved 'that his conscience ceases to control or influence his actions.' In other words, neither so-called 'emotional' nor 'moral' insanity will justify or excuse a crime."

In commenting upon the numerous prayers for instructions, at page 556, we said: "It is not surprising that, in the multiplicity of prayers for instructions on this issue, many of them conflicting, long, and involved, that the trial court, being under the necessity of ruling promptly and not having the time to investigate, should have failed to give a consistent and harmonious charge in conformity with the law as above announced, which we find to be the case. We can not comment upon each assignment of error and upon the separate prayers in which error appears without unnecessarily extending this opinion, * * *. Instead of the numerous instructions that were given, it would have been far better if the court, after announcing the law as to the burden of proof and declaring the above tests, had instructed the jury that if they believed from the preponderance of the evidence that the appellant was insane they should acquit him, otherwise they should convict him of the crime charged. If counsel had succinctly presented their respective contentions in a few plain prayers embodying the above tests, doubtless the errors that crept into the court's charge would have been avoided."

What we have said in *Bell* v. *State* is opposite to this case. In the case at bar the court did not heed the admonition and follow the suggestion of this court in *Bell* v. *State, supra*, and as a result we find that the court's charge on the issue of insanity is inconsistent and well calculated to mislead the jury. While some of the instructions given by the court on its own motion correctly declare the law in conformity with the law as announced by this court in *Bell* v. *State, supra*, other instructions were entirely out of harmony with the law as there declared and were contradictory and inconsistent in themselves. The same may be said with reference to the prayers of appellant for instructions. While some of them declared the law in conformity with previous decisions of this court, others did not.

The court told the jury in several of the written instructions given on its own motion that, if the appel-

lant at the time of the killing was laboring under a mental delusion, and the killing was the result of such delusion, and the appellant was unable to control his act, the jury should acquit him, provided they found the imaginary facts, if real, would justify or excuse the crime. For instance, the court gave instruction No. 10, as follows: "You are further instructed that, upon a consideration of all the testimony in the whole case, including the testimony tending to show defendant's insanity or mental incapacity for the commission of crime, if you find he was, at the time of the act of killing, laboring under a mental delusion and was unable to control his act, then you should acquit the defendant, provided you find that the imaginary facts, if real, would justify or excuse the crime."

In *Bolling* v. *State, supra,* we approved the rules announced in McNaughten's case, and one of them is to the effect that "if the defendant labors under a partial delusion only and is in other respects sane, he must be considered in the same situation as to responsibility as if the facts with respect to which the delusion exists were real." We also recognized this as announcing a correct legal principle in *Smith* v. *State,* 55 Ark. 259-263. It will be observed that the court in its instructions applied this principle broadly, and without qualification or limitation, which makes all the instructions containing this provision in direct conflict with the rule or doctrine as announced in the third test in *Bell* v. *State, supra,* and which had been firmly established in previous decisions of this court. *Williams* v. *State,* 50 Ark. 511-518; *Green* v. *State,* 64 Ark. 523-34; *Metropolitan Life Ins. Co. v. Shane,* 98 Ark. 132.

Commenting upon the legal tests laid down in *Bell* v. *State, supra,* we there said: "The second and third of these tests are applicable in every case where the evidence tends to prove, as it does here, that the accused, at the time of the alleged criminal act, was afflicted with that disease of the mind termed by medical experts, alienists and authors on medical jurisprudence as 'para-

noia,' which has progressed to the 'stage of persecu-
tion.' This disease manifests itself and is characterized
by systematized delusions; that is, a delusion based on
false premises, pursued by a logical process of reasoning
to an insane conclusion. *Taylor* v. *McClintock, supra.*
The victim of this disease, in its first stage, has appar-
ently a sound mind upon all subjects except those coming
within the particular sphere of his delusion, and he may
then be able to control his. actions with reference to his
delusion. Hence the reason for the rule announced in
*McNaughten's Case,*10 Clark & Finley's Rep.199-211, and
recognized by us in *Bolling* v. *State, supra,* that where
one labors under a partial delusion only, and is not in
other respects insane, he must be considered in the same
situation as to responsibility as if the facts with respect
to which the delusion exists were real. But where the
disease has progressed to its second stage, according to
Wharton & Stille, in their excellent work on Medical
Jurisprudence, pp. 828-1031b, 'the patient passes on to
the formation or delusion of suspicion and persecution.
He believes he is the object of evil designs of others; he
is talked about and maligned; he is shunned; his plans
are thwarted; he is unjustly dealt with; he is defrauded
of his rights. * * * He may fasten his suspicion upon
some particular person or persons. He meditates plans
of protection, and then of resentment. He has now be-
come the persecuted paranoiac, the most dangerous of
all the insane.'

"In this the second stage of the disease the mind of
the victim of paranoia may have become so completely
dominated by the disease as to render him incapable of
controlling his actions with reference to the subject-
matter of his delusions. The disease may have pro-
gressed to the extent that, in the language of Dean on
Med. Jur. 497, 'the reason has lost its empire over the
passions and the actions by which they are manifested to
such a degree that the individual can neither repress the
former nor abstain from the latter.' But he adds, 'it
does not follow that he may not be in possession of his

senses. The maniac may judge correctly of his actions without being in a condition to repress his passions and to abstain from the acts of violence to which they impel him.' Hence, the reason for the third test mentioned above, approved by the best of modern authorities.''

In the more recent case of *Hankins* v. *State*, 133 Ark. 38, at pages 47-48, we said: ''In approving these rules of McNaughten's case, the court did not hold that the doctrine of irresistible impulse caused by disease of the mind would not be a good defense in cases where the evidence adduced warranted it. In *Bolling* v. *State, supra,* the court was of the opinion that the evidence did not warrant an instruction on irresistible impulse, \* \* \*. Now, it seems to us, *en passant,* that this court, in *Bolling* v. *State, supra,* did not have the correct view of the evidence on the issue of irresistible impulse, for the testimony tended to prove that Bolling was afflicted with paranoia or delusional insanity which had progressed to the stage of suspicion and persecution, in which stage the homicidal tendency or mania is most pronounced.''

In the record now before us, there is testimony tending to prove that the appellant was afflicted with a disease of the brain, known as ''partial insanity,'' ''monomania'' or, in modern psychiatry, as ''paranoia,'' and that this disease had progressed to its second, or persecutory stage. There is also testimony from which the jury might have found that it had not progressed to that stage, and also testimony from which the jury might have found that the appellant was not insane at all. Such being the testimony, it was peculiarly a question of fact for the jury to determine whether or not the appellant was sane or insane according to the tests laid down in *Bell* v. *State, supra.* The rule that ''where one labors under a partial delusion only, and is in other respects sane, he must be considered as if the facts with respect to which the delusion exists were real,'' according to the doctrine of *Bell* v. *State, supra,* and *Hankins* v. *State, supra,* is limited in its application solely to those cases where the testimony proves or tends to prove that the

disease—paranoia—is in its first or earliest stage of development.

Paranoia is a progressive disease of the brain.. Webster defines it as follows: "a chronic form of insanity characterized by very gradual impairment of the intellect, systematized delusion, and usually by delusions of persecution or mandatory delusions producing homicidial tendency. In its mild form paranoia may consist in the well-marked crotchetiness exhibited by persons commonly called cranks." See, also, New Int. Enc. "Paranoia;" 1 Wharton & Stille, Med. Jur., p. 827, 1031 (a), (b), (c); 2 Clevenger's Med. Jur. of Insanity, p. 860 *et seq.* 865; Americana; Ency. Brit. In its first and earliest stage the manifestations of delusion indicating a disease of the mind are yet so mild and unpronounced that its victim, notwithstanding his mental delusion, may still be able to exercise his will and control his actions with reference to these delusions. Where such is the case, there is no room for the doctrine of irresistible impulse caused by a disease of the brain. But, where the disease has progressed or evoluted to its second or persecutory stage, or subsequent stages, and its form and hallucinations are such as to indicate that its victim, because of the disease, is no longer able to control his will and actions, then the doctrine of irresistible impulse as laid down in the third test, *supra,* is applicable. See Legal Medicine (Stewart), p. 405, section 158.

Where the defense is insanity, as was said in *Hankins* v. *State, supra,* "it is an issue of fact for the jury to determine whether the accused at the time of the alleged act was afflicted with a mental disease, and an issue of law as to whether the mental disease is such as to render him irresponsible. Therefore, the issue of responsibility or irresponsibility in such cases should be submitted to the jury under proper instructions." And in that case, after approving the legal tests or rules as announced in *Bell* v. *State, supra,* we further said: "These legal rules for determining the issue of guilt or innocence where the defense is insanity give the jury a

simple and definite guide announced by those learned in the law, and they cover every possible phase of testimony that may arise in any case."

In cases where the defense is insanity, if counsel in the preparation of their prayers for instructions and trial courts in framing their charges to the jury will but follow the legal tests or rules as approved and announced by this court in the recent case of *Bell* v. *State, supra*, and *Hankins* v. *State, supra*, they can not go astray. As was said in *Kelley* v. *State*, 146 Ark. 509, "In those cases the whole subject was gone into as thoroughly as could be done by the writer who voiced the opinion of the court. We deem it unnecessary here to do more than call the attention of the court and counsel to those cases which must have been overlooked in the framing of the charge to the jury."

For the error in the rulings of the court in its instructions to the jury, the judgment is reversed, and the cause will be remanded for a new trial.