Submitted without argument September 5, decided September 12, 1911.

## STATE *v.* GARRISON.

[117 Pac. 657.]

CRIMINAL LAW—EVIDENCE—CONFESSIONS—VOLUNTARY CHARACTER.

1. Before a confession can be admitted in evidence, it must be shown to have been voluntarily made.

CRIMINAL LAW—EVIDENCE—CONFESSIONS—USE OF EVIDENCE OBTAINED BY CONFESSIONS.

2. While the existence of independent facts ascertained through an involuntary confession extorted from the accused may always be shown, one testifying to the existence of such facts cannot introduce the confession *in toto*, but only state in a general way that these facts were discovered after conversations with and in pursuance of information given by the accused.

CRIMINAL LAW—APPEAL—REVIEW—CONFESSIONS.

3. Where there is no conflict in the preliminary evidence introduced to show the voluntary character of a confession, and the State's evidence showed that it was involuntary, the appellate court can review the trial judge's findings that it was voluntary.

CRIMINAL LAW—OPINION EVIDENCE—HYPOTHETICAL QUESTIONS—
      MENTAL CONDITION.

4. Where the accused's mental capacity was in issue, it was improper for the prosecution, in addressing hypothetical questions to an expert witness, to select isolated circumstances as not showing insanity, or to include in the question facts not relating to accused's mental condition.

HOMICIDE—INSTRUCTIONS—ABANDONMENT.

5. An instruction pointing out the penalty for the different degrees of homicide included in the indictment was properly refused, as the jury has no discretion in fixing the punishment.

From Coos: JOHN S. COKE, Judge.

The defendant, Frank S. Garrison, was tried and convicted of the crime of murder and from the sentence imposed he appeals.          REVERSED.

Submitted on briefs without argument under the proviso of Rule 16 of the Supreme Court.  50 Or. 580 (91 Pac. x).

For appellant there was a brief over the names of *Mr. James T. Hall, Mr. Charles A. Sehlbrede* and *Mr. Robert O. Graves.*

For the State there was a brief over the name of *Mr. George M. Brown,* prosecuting attorney, and *Mr. L. A. Liljeqvist,* deputy prosecuting attorney.

MR. JUSTICE BURNETT delivered the opinion of the court.

The principal error complained of by the defendant is the action of the court in receiving in evidence certain confessions said to have been made by the defendant. Soon after the disappearance of the deceased, the defendant was arrested by the sheriff of Coos County and one J. E. Graham, some time a detective. The arrest seems to have been made on suspicion, and so far as appears from the record, the defendant was apprehended without a warrant, and, instead of being taken before a magis-

trate and informed of his right to the aid of counsel, he was incarcerated in the city jail of Marshfield and kept there several days without any legal proceedings being had in the matter.

The defendant is described by nearly all the witnesses who spoke on that question as not being very bright and rather weak-minded. During the time he remained in the Marshfield city jail, and before he was taken to the county jail at Coquille City, Graham visited the defendant frequently, and questioned him very closely about the commission of the alleged murder. The witness first approached the defendant on the grounds that a good many people were finding fault with him because he was so intimate with the defendant, and it would be only justice to the witness that the defendant tell about his connection with the murder. The witness, in answer to categorical questions propounded by the prosecutor, stated in form that neither he nor any one else to his knowledge ever used any force or inducement to persuade the defendant to talk; but on cross-examination he admitted that during the conversations referred to he told the defendant that, if he would tell him all he knew about the affair, he would protect him from any mob, and that the accused appeared to be in fear that he would be mobbed, and, further, the witness admits telling him that it would be better for him if he would tell about the murder, and that, as the facts would come out in time, he had just as well tell. This is a substantial statement of all the evidence on the subject of whether the confession was voluntary. In response to the questioning of the detective, Graham, according to his statement, the defendant told him that he stole a boat and put the body of the deceased into it, after having shot him; that he only fired one shot and tied some rocks to the body, one at either end, and took it in the stolen boat to the mouth of Coos River, where he threw it into the water and after-

wards turned the boat adrift.  The defendant by his counsel, not only objected to the admission of this evidence on the grounds that the alleged confession was not voluntarily made, that it was shown to be made under the influence of the promises of the witness to the defendant, but also moved to strike out the testimony, and further asked the court to instruct the jury to disregard the same.

1. In the case of *State* v. *Wintzingerode,* 9 Or. 153, the rule was established in this state that a confession to be admitted in evidence must be shown in the first instance to have been made freely and voluntarily by the accused.  In that case the officer having charge of the prisoner said to him, "it would be better for you, Harry, to tell the whole thing," and thereupon the accused confessed to the killing of the deceased.  Upon this statement of facts the circuit court excluded the testimony.  Afterwards, however, the State produced another witness who, at a subsequent time, within a day or two after the first confession, interrogated the defendant about the crime and received from him a similar statement.  This court in that case held that the exclusion of the original testimony by the circuit court was proper, and, furthermore, that it was wrong to admit the testimony of the subsequent confession without a further showing that the influence of the first statement that it would be better for the defendant to admit the whole thing had been overcome so as to establish that the subsequent confession had been made voluntarily.  The principle announced by the court in that case has never been disturbed in this State.  It is supported by a long line of authorities from almost every state in the Union, and is declaratory of the common law on that subject.

2. It is contended, however, by the prosecution, that the truth of the defendant's so-called confession was demonstrated by subsequent investigation showing for instance that the body was weighted with stones as

described by the defendant, that there was but one shot in the body, and that there were blood stains on the ferry landing where he said he stole the boat and dragged the body into it and the like. It is a principle well established by authority that, however the existence of independent facts inculpating the accused are ascertained, whether by his voluntary or involuntary confessions, still such facts may be given in evidence *aliunde* and with this principle we have no dispute; but in no case that we have discovered, after careful research, is it laid down that a confession of guilt as such extorted from the defendant under the influence of promises can be admitted in evidence against him. The cases cited by the State are, in effect, that these independent facts ascertained by the so-called confessions may be detailed in evidence by witnesses to whose knowledge they have come through their own investigation, and some cases go so far that in a general way it may be stated in evidence that these facts were discovered after conversations with and in pursuance of information given by the defendant; but none of them go so far as to say that the so-called confession itself can be given in evidence *in toto*.

In the case at bar, however, the prosecution, with the sanction of the trial court, went beyond even the latter class of cases, and gave in evidence not only statements of the defendant as to where the body might be found and the like, but also his direct confession of having shot the decedent. In our judgment the border line of sound legal principle is reached when a witness is allowed to state in general terms that he ascertained the facts and circumstances by his own investigation prompted by statements of the defendant. To go further and admit direct confessions of guilt obtained by either threats or promises designed to influence the prisoner is to put a premium on the unscrupulous methods of overzealous detectives, and to take a step backward towards the thumb screw and

the rack as a means of procuring testimony: *State* v. *Garvey,* 28 La. Ann. 925 (26 Am. Rep. 123) ; *Biscoe* v. *State,* 67 Md. 6 (8 Atl. 571) ; *Duffy* v. *People,* 26 N. Y. 588; *Gregg* v. *State,* 106 Ala. 44 (17 South. 321) ; *State* v. *Wood,* 122 La. 1014 (48 South. 438: 20 L. R. A. (N. S.) 392).

3. It is also urged by the prosecution that as the preliminary question about the admissibility of the confession, depending upon whether it was voluntary or not, was one of fact to be decided by the trial court, we cannot disturb its finding on that point. This position might be well taken if there were any dispute in the testimony on that issue, but there is no such dispute. The fact of the confession being induced by a promise of protection made to the defendant and the exhortation of his captor that it would be better for him to confess, appears from the testimony for the State, and the defendant can well avail himself of a demurrer to the evidence for the State on that ancillary issue.

4. It is further urged by the defendant that the circuit court erred in the manner of receiving expert testimony in answer to hypothetical questions propounded by the prosecution. There was evidence on behalf of the defendant on the subject of his insanity. Several of his acquaintances gave their opinions in that direction to the effect that he was not of sound mind, and several of them assigned as reasons therefor certain detached foolish actions of the defendant. One stated, for illustration, that in a fit of anger the defendant undertook to stamp in the bottom of a boat, and failing in that, took an oar and punched a hole in the boat, and allowed it to sink. Another gave instances of his fondness for dogs and a gun, and said, in substance, that the defendant could not talk long at a time without getting onto the subject of dogs.

The prosecution called, as an expert, in rebuttal Dr. O. E. Tamiesie, one of the physicians at the State Hospital

for Insane.  To this witness the prosecutor would state one of these instances given as reasons by the witnesses for the defense, and would ask him if that was an evidence of insanity, and so on, one by one through the category of separate and detached occurrences mentioned by the witnesses for the defense.  In substance, the uniform answer to these questions was that such an instance taken alone would not be conclusive evidence of insanity.  This method of examination is at least open to criticism for the mental capacity of a party is not demonstrated by a single occurrence.  It depends rather upon a long course of behavior and mental phenomena.

Going to the other extreme, the prosecutor propounded to the expert witness a series of questions embracing the complete history of the crime as claimed by the prosecution, including not only the conduct and actions of the defendant, but also the movements and statements of the deceased and other matters in which the defendant had no part.  These doings of other persons do not indicate anything about the mental development of the accused, and have no place whatever in the hypothetical questions propounded to the expert witness relating to the prisoner's sanity.  A hypothetical question should be germane to the matter in hand.  Interrogatories propounded to the specialist about the sanity or insanity of the defendant should be based upon some theory fairly to be derived from the testimony on that subject.  They should not be clouded with matters not pertaining to the mental soundness of the accused.  In these respects we deem the examination of the expert witness to be faulty and the rulings of the court erroneous.

5. The defendant assigns as errors the refusal of the court to give sundry instructions asked for by his counsel. Many of them were given in substance by the court in its charge.  Some of them pointed out to the jury the penalty of the different degrees of homicide included in

the indictment. There was no error in refusing these last instructions, for the jury has nothing to do with the penalty to be inflicted on the defendant in case of an adverse verdict. The sole duty of the jury is to take the law from the court, and apply it to the evidence adduced on the trial, and reach a conclusion of fact to be embodied in the verdict. The penalty is the consequence which the law affixes to the facts as found by the jury, and is beyond the power or province of the jury to change or gainsay: *State* v. *Daley*, 54 Or. 514 (103 Pac. 502: 104 Pac. 1).

The judgment of the circuit court is reversed, and the cause remanded for further proceedings as provided by law.　　　　　　　　　　　　　　　REVERSED.