Argued September 11; reversed October 1, 1946

# STATE *v.* LINN
(173 P. (2d) 305)

Martin W. Hawkins, Judge.

*Philip M. Bagley* and *Charles E. Raymond,* of Portland (T. B. Handley, District Attorney, and Charles E. Raymond, Deputy District Attorney for Multnomah County, both of Portland, on the brief), for respondent.

*William B. Murray,* of Portland, for appellant.

Before Belt, Chief Justice, and Kelly, Bailey, Brand and Hay, Justices.

BRAND, J.

There are two assignments of error. The first relates to the admission in evidence, over objection, of State's Exhibit 2, which reads as follows:

"Subject: Confession

"I, Earl A. Linn, of 5954 S. E. 22nd Ave., do hereby confess to * * * attempted intercourse with Betty on two occasions. The vagina * * * being too small, their was no insertion. The above acts took place in my car at 37 S. E. 127th St. * * * I make the above confession of my own free will and testimony, and I have known this girls since the middle part of 1944, and I realize these girls are minors.

Witness:
C. D. Larsen
Ralph A. Benton

Signed: Earl A. Linn, 37 yrs.
5954 S. E. 22nd Ave."

The defendant objected to the admission of the exhibits on the ground that portions thereof had been deleted, and also objected to the plural language therein, "these girls." The objections were not well taken.

The exhibit, in its original form, contains statements implicating the defendant with another female

child. It was proper for the court to delete any reference to alleged offenses committed with any one other than the prosecuting witness when, as here, the part relating to other offenses could be separated from the part bearing upon the immediate issue. The reference to "these girls" could not be deleted for the language was not separable. *Robinson v. United States*, 63 F. (2d) 147; 22 C. J. S., Criminal Law, § 738 at page 1274, § 820 at pages 1440, 1441.

■ A more serious objection arises not to the admission of Exhibit 2, but to the use to which it was put. In this state the prosecution is compelled to prove some particular act constituting the crime and rely upon that for a conviction. *State v. Goddard*, 69 Or. 73, 91, 133 P. 90, 138 P. 243, Ann. Cas. 1916A, 146; *State v. Hardin*, 63 Or. 305, 127 P. 789.

While the prosecution made no formal election, it did nevertheless rely upon an act alleged to have been committed on the night of April 22, 1945, in an automobile in front of the Henderson's house at 39 Southeast 127th Street, Portland, Oregon. Under the evidence the jury could not have convicted the defendant for any other act. This is not because the indictment specified April 22nd as the date of the offense, but because the proof was limited to it. As stated in the brief of the prosecution, "that is the offense for which he was convicted."

■ A voluntary statement by the defendant concerning attempts to have carnal knowledge of the prosecuting witness on occasions other than the one on which the State relied for conviction might have been admissible "to show the relationship and familiarity of the parties, and as corroborative of the prosecutrix' testimony concerning the particular act relied upon for a convic-

tion," *State v. Robinson*, 32 Or. 43, at page 50, 48 P. 357; or, as otherwise stated, "to prove the inclination or disposition to commit the act for which the accused is on trial," *State v. Hardin*, supra, at page 308. But an admission by a defendant of acts other than the one for which he is being tried is not a confession. Such evidence is admissible only for a limited purpose. In the case at bar, there is nothing to indicate that the defendant's "attempted intercourse with Betty on two occasions" referred to the alleged act of April 22nd. The two occasions, if they occurred, may have had no connection in time or circumstance with the offense for which the defendant was tried. Yet the exhibit was entitled "confession."

■ In presenting it, the prosecution said: "I offer State's Exhibit 2 as a confession of the defendant * * *." And the court said: "I am allowing the confession, as deleted." Exhibit 2 was identified by the court in its instructions thus: "Regarding the confession of the defendant * * *." Timely objection was made upon the stated ground that Exhibit 2 was not a confession, and we think its receipt *as such* was error. However, since it was entitled, offered and received as a confession, which it may or may not have been, we will, of course, treat it as such here. See *State v. Ellis*, 207 La. 812, 22 So. (2d) 181.

The most serious question relates to the admissibility of Exhibit 2 as a voluntary statement of the defendant. The defendant was arrested, immediately handcuffed and taken to a room in the courthouse for questioning by Officers Benton and Larsen. Both officers testified in general terms that no promises or threats were made to the defendant, that they never coerced him, and that he signed the exhibit of his own

free will. However, Officer Benton also testified that he told the defendant he was "in a tough spot."

Officer Benton testified further as follows:

"Q (by Mr. Murray) At that time did you say to the defendant something about the Sparks case, where another man had been involved with these girls, and that he was sentenced to seven years?

"A Yes.

"Q And at that time did you tell him that you felt it was the defendant's best bet to come clean with the admission?

"A Words to that effect, yes. * * *

"A Yes, we mentioned the Sparks case to him and told him we thought that it was his best bet to throw himself on the leniency of the Court. That is correct.

"Q That it would be better for him if he did that?

"A That we felt it would be better for him if he did that. We couldn't promise him anything. * * *

"A We told him we felt that his best bet and it would be better for him if—you can call it walk in or whatever you want to call it—throw himself on the mercy of the Court.

"Q What did you mean by that, if he threw himself on the mercy of the Court; what did you mean by that?

"A Well, I guess you would call it if he walked in and pled guilty. But this was after he had told us a lot of the deals that had taken place out there.

"Q Did you mean by that, that he would get an easier sentence?

"A Certainly. * * *

"Q But you did tell him it would be better for him if he came clean, and that he was in a tough spot, and if he made a confession it would be better for him?

"A No, we didn't. I told him it might be."

The foregoing conversation as narrated by the officer occurred before Exhibit 2 was signed.

Officer Larsen testified as follows:

"* * * Didn't you hear Officer Benton tell him that it would be better for him to plead guilty and to go in and throw himself on the mercy of the court?

"A I really don't remember, sir."

At a former trial of this cause he testified as follows:

"Question: You told him it was better for him to plead guilty? Answer: I, personally, did not. Question: You agreed with your brother officer in it? Answer: Yes. Question: You just as well told him—you didn't raise any opposition to it, did you? Answer: No, sir."

The foregoing testimony was taken in the absence of the jury upon the preliminary issue of admissibility of the alleged confession.

After the officers had testified, the defendant also testified in chambers as follows:

"A * * * The officer said that the girls were under age and were a little subnormal mentally, so that their word would be taken and I hadn't a leg to stand on. That is the words he used. * * *

"Q What did Officer Benton tell you about pleading guilty or making a confession?

"A Well, he again asked me if I was guilty. I said no, absolutely not. Well, he said, 'We think you are, and the best thing for you to do is to come clean, plead guilty.'

"Q Did he say it would be better for you to do that?

"A Yes, he said if I did, I would receive a sentence that wouldn't inconvenience me very much. What that was to be, I don't know.

"Q Did he say anything to you about getting off easy?

"A Yes, that was the impression given to me. I was convinced that I was in an impossible predicament and that they were my friends and telling me the best thing to do. * * *

"Q Now, what did you understand when they told you about pleading guilty, about it being better for you?

"A Well, as I said before, I understood that the sentence would not inconvenience me very much, in other words, it would not be a very heavy penalty.

"Q It would be better for you if you did?

"A Yes.

"Q And if you did not, then what?

"A Officer Benton said they would fight me to the last inch. That was the exact words used."

After the close of defendant's testimony on the preliminary issue, no rebuttal testimony was offered by the prosecution. The defendant's statement to the effect that, if he did not plead guilty, the officers would fight him "to the last inch" was undenied.

Again in the testimony before the jury, Officer Benton admitted that he told the defendant that it would be best for him to come clean with the admission and confess. He testified: "I told him I felt he would get a better deal if he walked in and pled guilty."

Also before the jury, Officer Larsen testified as follows:

"Q Were you present at the time that Officer Benton told the defendant that it would be better for him to sign this confession and that it would go easier on him if he signed it?

"A. I don't think Deputy Benton made that statement, as you state it.

"Q Well, in what particular did he say it different than I say it?

"A That it might go easier with him.

"Q If he would sign the paper, State's Exhibit 2, is that correct?

"A Yes."

After the admission of Exhibit 2, the defendant testified before the jury as follows:

"Q And did they say anything to you about your receiving a similar sentence, or more?

"A No, but they did say that if I wanted to do it the hard way—that was the expression used—and cause the State the expense of a trial, they would fight me to the last inch. Who they meant by 'they', I can't say. Those were the words used. That is the truth."

Neither officer thereafter took the stand to deny the statement.

■ A confession which is actually or practically an acknowledgment of guilt is prima facie involuntary. It is inadmissible unless it is affirmatively shown to have been made under conditions which would not induce a false statement. *State v. Howard,* 102 Or. 431, 203 P. 311; *State v. Scott,* 63 Or. 444, 128 P. 441; *State v. Roselair,* 57 Or. 8, 109 P. 865. The rule has been stated thus: "Was the inducement held out to the accused such as that there is any fair risk of a false confession, for the object of the rule is not to exclude a confession of the truth but to avoid the possibility of a confession of guilt from one who is in fact innocent." *State v. Green,* 128 Or. 49, 273 P. 381.

■ The offer in evidence of a confession presents a preliminary question for decision of the trial court. In general that decision will not be disturbed on appeal

unless the record discloses manifest error. *State v. Layton*, 174 Or. 217, 148 P. (2d) 522. As applied to the court's findings upon conflicting evidence, this rule is particularly applicable. But if the evidence on the preliminary issue is undisputed, the correctness of the findings of the trial court becomes a question of law for determination on appeal. *State v. Green*, supra; *State v. Garrison*, 59 Or. 440, 445, 117 P. 657. Again, it has been held that the defendant has a right, if he demands it, to present evidence on the preliminary issue which must receive consideration by the court if undisputed. *People v. Gonzales*, 24 Cal. (2d) 870, 151 P. (2d) 251; *People v. Eli*, 131 Cal. App. 482, 21 P. (2d) 654, based on a California statute identical to O. C. L. A. § 26-927; *State v. Lanthier*, 201 La. 844, 10 So. (2d) 638; *State v. Blake*, 198 N. C. 547, 152 S. E. 632; *State v. Whitener*, 191 N. C. 659, 132 S. E. 603; *Lewis v. State*, 123 Tex. Cr. Rep. 311, 58 S. W. (2d) 827.

In *People v. Holick*, 337 Ill. 333, 169 N. E. 169, the defendant testified to specific facts indicating that the confession was obtained by physical duress. The police officer stated in general terms that no inducement, threat or promises had been made. Concerning the policeman's testimony, the court said:

"It is true that the police officer denied that any inducement, threat, or promise was made to procure the alleged confession, but such denial was in the form of a categorical answer made by him to a leading question volunteered by the court. This was but a conclusion of the witness and not the denial of any specific fact. * * * We have repeatedly held * * * that the court has no right to disregard the testimony of the accused showing that a confession was forced by threats and physical violence, without a specific denial of the facts to which he testified." *People v. Holick*, supra.

The same reasoning was employed in *State v. Garrison,* supra. In that case a detective as witness for the prosecution testified in general terms that "neither he nor any one else to his knowledge ever used any force or inducement to persuade the defendant to talk," but on cross-examination admitted that he had told the defendant that "if he would tell him all he knew about the affair, he would protect him from any mob," and that "it would be better for him if he would tell about the murder, and that, as the facts would come out in time, he had just as well tell." Notwithstanding the general assertion of the witness on direct examination, this court treated his specific statements on cross-examination as undisputed.

The Holick and Garrison cases are in point here. The defendant testified, both in the preliminary hearing and before the jury, concerning specific inducements and also concerning direct and positive threats made by the officers to the effect that they would fight the defendant "to the last inch" if the defendant decided to do it the "hard way." This specific statement was wholly undenied and was contradicted, if at all, only by the earlier general conclusions of the police officers that the confession was voluntarily made.

As recognized by the trial court, the case appears to be within the rule of the case of *State v. Wintzingerode,* 9 Or. 153. In that case the officer having the prisoner in custody said: "It would be better for you, Harry, to tell the whole thing." Thereupon the defendant confessed. The trial court ruled the confession inadmissible. This court said:

"We have no reason to doubt the correctness of the ruling of the circuit court rejecting the testimony of officer Mead as to the confession made to him by the appellant. * * *

"The precise form of words in which the inducement is presented to the prisoner's mind is immaterial. It is sufficient if they convey to him the idea of temporal benefit or disadvantage, and his confession follows in consequence of the hopes thereby excited." *State v. Wintzingerode,* supra.

Speaking of *State v. Wintzingerode,* this court said:

"The principle announced by the court in that case has never been disturbed in this State. It is supported by a long line of authorities from almost every state in the Union, and is declaratory of the common law on that subject." *State v. Garrison,* supra.

For a historical review of English and American common law decisions establishing the early rule, see *Bram v. United States,* 168 U. S. 532, 42 L. Ed. 568, 18 S. Ct. 183.

The later decisions disclose, however, that the Wintzingerode case is not to be applied automatically as a rule of thumb. As pointed out in *State v. Parsons,* 108 W. Va. 705, 152 S. E. 745, the West Virginia court very properly distinguishes between "mere adjuration," on the one hand, and adjuration accompanied by inducement on the other. It is the inducement only which invalidates a confession.

Again, notwithstanding the earlier cases, the courts are no longer disposed to invalidate a confession merely because the defendant was told that it would be better for him to tell the truth, or to tell what he knows or the like. In *Laub v. State,* 24 Ariz. 175, 207 P. 465, the court said:

"The decisions, numerically, and in our firm conviction the better reason, are with the proposition that the use of the language referred to does

not in itself vitiate a confession so prompted."
*Laub v. State,* supra.

The court relied upon the following quotation from
Wigmore:

"On principle, the advice by any person what-
ever that it would be better to tell the truth cannot
possibly vitiate the confession, since by hypothesis
the worst that it can evoke is the truth, and there
is thus no risk of accepting a false confession. The
confessor is not obliged to choose between silence
and a false confession having powerful advantages;
the advantages are attached to the utterance of
the truth, and, however tempting we may suppose
them to be, there is nothing in the nature of the
temptation to make the statement untrustworthy;
for if it has availed at all, it has availed to bring
out the truth." 1 Wigmore on Evidence, sec. 832.

And see *Anderson v. State,* 205 Ind. 607, 186 N. E. 316.

In *State v. Humphrey,* 63 Or. 540, 128 P. 824, a wit-
ness testified that he said to the defendant: "Now,
George, tell the truth about this matter. Get that load
off your stomach, and you will feel better." This court
distinguished the Wintzingerode case and held that the
confession of Humphrey was voluntary.

In *State v. Morris,* 83 Or. 429, 163 P. 567, one of the
officers testified that he may have said to the defend-
ant: "Now, Tommy, it will be better for you to tell
all you know about this matter, if you know anything
about it." The defendant testified: "He told me to tell
the truth, it would be better for me and he would do all
he could for me." The confession was received in evi-
dence. The majority of this court, upon consideration
of all the circumstances of the case, upheld the ruling
of the trial court.

The modern view is set forth by the Supreme Court of Missouri as follows:

"In other jurisdictions authority on the question is divided, 16 Corpus Juris, section 1476, page 721, with the preponderance apparently on the side that merely telling the accused it would be better to speak the truth does not vitiate the confession. 1 Ruling Case Law, section 102, page 555, says:

" 'In a number of cases, especially in England, an adjuration or exhortation to the accused by a person in authority, as distinguished from a private person that it would be "better" for the accused to speak or tell the truth, has been held to render the confession inadmissible. But the sounder rule is that a confession is not rendered involuntary by advice to the accused that it would be better for him to confess or tell the truth or by advice to confess if guilty and if not guilty to stand firm.' [See, also, 18 L. R. A. (N. S.) 816, note; 50 L. R. A. (N. S.) 1086, note; State v. Jon, 46 Nev. 418, 211 Pac. 676, 30 A. L. R. 1443, 1446.]

"The real question is whether the language used in regard to speaking the truth, taken in connection with all the attending circumstances, shows the confession was made under the influence of some threat or promise. [16 C. J., sec. 1476, p. 721.] * * * Each case must stand upon its special circumstances —so much so that it has been said to be difficult, if not impossible, to formulate a rule that will comprehend all cases. [Hopt v. Utah, 110 U. S. 574, 583, 4 Sup. Ct. 202, 28 L. Ed. 262.]' " State v. Tharp, 334 Mo. 46, 56, 64 S. W. (2d) 249.

■ In the case at bar, the question does not relate to a mere adjuration to tell the truth, nor to a mere statement that it would be better to tell the truth. The inducements went much further and were calculated to induce a confession of guilt. In addition to the specifically undenied testimony of the defendant that if

defendant did it "the hard way" they would fight him to the last inch, the testimony of the officers themselves discloses a subtle attempt to instill in the mind of the defendant (1) fear of a seven year sentence and of official hostility if he refused to confess and (2) expectation of leniency if he admitted the crime.

We adhere to the rule of the earlier Oregon decisions cited supra which impose upon the trial court the duty of determining whether the inducement was such as to create a fair risk of a false confession.

The difficulty arises from the fact that when the defendant has been subjected to threats or inducements, it is impossible for the court to know with certainty what the effect upon the mind of the defendant has been.

> "In such cases, the law can not measure the force of the influence used nor decide upon the effect such promises may have had upon the mind of the prisoner." *People v. Campbell,* 359 Ill. 286, 194 N. E. 533.

*Bram v. United States,* supra; *People v. Swift,* 319 Ill. 359, 150 N. E. 263; *State v. Henry,* 196 La. 218, 198 So. 910.

This is not a case in which the guilt of the defendant was clearly and overwhelmingly established or in which there was competent and undisputed evidence of voluntary confessions other than that contained in Exhibit 2. Here the defendant had twice been tried, the first trial resulting in a hung jury. The prosecuting witness was a feeble-minded child and the evidence for the state was confused and in some respects contradictory. The confession was obviously the basis on which the verdict of guilty rested. Upon consideration of the entire record and the undisputed evidence, we find that the

defendant was influenced to execute Exhibit 2 by the deliberate employment of inducements and threats and that the receipt in evidence of that exhibit as a confession was error since it was not shown to have been voluntary. By its receipt, the defendant, whether in fact guilty or not, was deprived of a fair trial. His substantial rights were violated, and therefore the judgment of conviction must be reversed.

 The second assignment of error relates to a matter which probably will not arise upon a new trial. Reverend Walton was called as a character witness on behalf of the defendant. Upon his cross-examination, the prosecutor asked the witness if he had ever heard that the defendant had taken personal liberties with the person of Miss Nina Ulman (the sister of the prosecutrix). The witness answered in the negative, and the cross-examination was closed. Counsel for the defense addressed the prosecutor as follows: "I think you meant Betty, not Nina Ulman * * *." The prosecutor replied: "I think I can show the other one." The defendant claims that this statement made in the presence of the jury constituted ground for mistrial.

In cases of this kind it is within the judicial discretion of the trial court to permit cross-examination of a character witness as to his knowledge of similar misconduct by the defendant with a child other than the prosecutrix. But as this court has said:

> "A distinction is to be drawn, however, between an attempt to offer direct testimony about other crimes, on one hand, and the limits of cross-examination, on the other, although something may thereby incidentally appear indicative of other criminality on the part of the defendant." *State v. Bateham,* 94 Or. 524, 530, 186 P. 5.

See also *State v. Doris,* 51 Or. 136, 94 P. 44, 16 L. R. A. (N. S.) 660; *State v. Ogden,* 39 Or. 195, 65 P. 449.

Although the cross-examination of Dr. Walton was not improper, the statement of the prosecutor to the effect that he could "show the other one" may well have been understood by the jury as meaning that the State could introduce direct testimony of another crime committed with a different child. This the State cannot do. *State v. Poole,* 161 Or. 481, 90 P. (2d) 472; *State v. Putney,* 110 Or. 634, 224 P. 279; *State v. Jensen,* 70 Or. 156, 140 P. 740. The remark of the prosecutor should not have been made.

The judgment of the lower court is reversed and the cause remanded for further proceedings not inconsistent with our opinion herein.