Argued and submitted May 13, affirmed in part; reversed in part; and remanded for
trial November 9, 1983

# STATE OF OREGON,
*Appellant,*

*v.*

# SHARON KAY FARMER,
*Respondent.*

## (C 82-06-35872; CA A26219)

671 P2d 757

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Phillip M. Margolin, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

In this criminal proceeding, the state appeals from a pretrial order suppressing statements made by defendant concerning the death of her husband. The state contends that the trial court erred in concluding that defendant's statements were involuntary due to extreme emotional disturbance and by dismissing the case on its own motion. We find only the latter ruling erroneous. Accordingly, we affirm in part, reverse in part and remand for trial.

On June 22, 1982, at approximately 3:30 a.m., the Portland police received a call from defendant stating that she had just shot her husband and needed assistance. During this call, defendant was crying, spoke in choppy sentences and had trouble catching her breath. Officer Thomas, responding to the call, found the body of defendant's husband lying on the floor near the door and observed defendant sitting on the couch, crying and talking on the telephone to the police dispatcher.

Thomas advised defendant of her rights and asked her to come into the kitchen. Defendant stated that she understood her rights and then, in response to Thomas's questions, made the statements at issue here. During the interview, which lasted approximately five minutes, defendant sobbed and cried off and on and had to be asked some questions more than once. Thomas characterized defendant as being visibly upset, but not hysterical. He also stated that her answers to his questions were coherent. The state also introduced in evidence a tape made by the police of defendant's call to the police requesting assistance.

After the interview, defendant asked permission to call her father, whom she had also called before phoning the police. Her father testified that, during the first phone call, defendant sounded very upset and that, during the second phone call, made after the interview with the police, she sounded more upset. Dr. Joseph Bloom, a psychiatrist testifying at the suppression hearing, stated after hearing the tape of defendant's call to the police, that defendant was under the influence of an extreme emotional disturbance at the time she made that call.

The trial court, in granting defendant's motion to suppress, concluded that, at the time of the interview with

Thomas, she was in a state of extreme emotional disburbance and, therefore, her statements were not the product of a rational intellect and a free will. The court suppressed the statements and, upon being advised that the state would appeal, dismissed the case. This appeal followed.

While we are bound by the trial court's findings of historical fact if there is evidence to support them, we are free to decide, based on those facts, whether or not the statements were voluntarily given. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). The state has the burden of proving by the clear weight of the evidence that defendant's confession was voluntary. *State v. Burdick,* 57 Or App 601, 646 P2d 91 (1982); *State v. Lloyd,* 22 Or App 254, 538 P2d 1278 (1975).

The evidence presented at the suppression hearing does sustain the finding of historical fact that defendant was in a state of extreme emotional disburbance at the time of the interview. The tape made before the interview established that defendant was very upset; defendant's father's testimony established that, following the interview, defendant had become even more upset. Thus, a permissible inference could be drawn that, during the intervening five minute interview, defendant continued to be in an extreme emotional state. The evidence justifies the finding, and this court is bound to accept it.

The trial court's use of the phrase "extreme emotional disturbance" to describe the defendant's condition introduced a term of art into the case:

" 'Extreme emotional disturbance' has been defined as:

" '* * * the emotional state of an individual who: (a) has no mental disease or defect (that rises to the level established by statute defining lack of criminal responsibility); (b) is exposed to an extremely unusual and overwhelming stress; and (c) has an extreme emotional reaction to it, *as a result of which there is a loss of self-control and reason is overborn* by intense feelings, such as passion, anger, distress, grief, excessive agitation or other, similar emotions * * *.' *People v. Ford,* 423 NYS2d 402, 404, 102 Misc 2d 160 (1979). (Parenthetical added)." *State v. Carson,* 292 Or 451, 459, 640 P2d 586 (1982). (Emphasis supplied.)

We understand the court to have found that, at the time she was interviewed by Thomas, defendant's mental

condition was such that she had lost self-control and the capacity to reason in any sort of informed way. Again, this construction of the evidence, while we might not agree with it ourselves, finds support in the record. We think it follows from those findings and the definition in *State v. Carson, supra,* that defendant did not have the capacity to make her incriminating statements to Thomas voluntarily The trial court did not err in suppressing defendant's statements made to Thomas.[1]

■ As its second assignment of error, the state contends that the trial court improperly dismissed this case while the state appealed the pretrial order suppressing evidence. We agree. A dismissal was neither authorized nor appropriate. *State v. Hoare,* 20 Or App 439, 446, 532 P2d 240 (1975).

Affirmed in part; reversed in part; and remanded for trial.

---

[1] The trial court was probably correct for at least one other reason although it was not the reason the court used: defendant's condition was such that she lacked capacity to understand her *Miranda* rights as they were explained to her by Thomas and, therefore, she could not have knowingly and intelligently waived those rights.