Argued and submitted November 5, 1990, conviction affirmed; judgment modified
June 19, reconsideration denied August 7, petition for review denied
September 24, 1991 (312 Or 151)

STATE OF OREGON,
*Respondent,*

*v.*

MICHELLE LYNN BURKS,
*Appellant.*

(88-10-36986; CA A64492)

813 P2d 1071

Laura Graser, Portland, argued the cause and filed the brief for appellant.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant, who was 15 years old, was remanded to circuit court for trial as an adult, ORS 419.533, and was convicted on three counts of aggravated murder.[1] She appeals and assigns as error the denial of her motion to suppress her confession, the admission of testimony and the sentence. We affirm the conviction but modify the sentence.

The victim, an elderly woman, was killed in her Portland home on June 29, 1988. She died as a result of multiple stab wounds. Her body was not discovered until July 1. On June 29, an ambulance picked up defendant at a residence across the street from the victim's house. Defendant had a deep knife cut on the hand and was taken to the hospital for treatment. She reported that a man had attempted to rape her and that she had been cut during the struggle. After her release from the hospital that day, she went to Salem to stay with her father.

After the homicide was discovered, the officers in charge of the investigation learned of defendant's report of an attempted rape and went to her father's home to interview her. They considered her to be a suspect in the homicide but initially only discussed with her the reported attempted rape. She described her assailant and said that she had sustained the knife wound when she grabbed the knife that he used. At their request, defendant showed the officers the clothing that she wore during the alleged rape attempt. The officers noted that one of the shoes she presented had blood on the sole and matched a shoe print at the scene of the homicide. The officers had not mentioned the homicide or discussed it with the defendant in any way and had not advised her of her constitutional rights. At the end of the interview, the officers arrested her on an outstanding misdemeanor warrant and took her to the Marion County jail.

After they had booked her on the warrant, the officers took defendant to an interview room, advised her of her rights and told her that they wanted to talk to her about another matter, the homicide. She signed a form indicating

---

[1] The indictment alleged three theories: (1) defendant killed the victim in the course of a robbery; (2) she intentionally killed the victim during a burglary; and (3) she killed the victim to conceal her identity as the perpetrator.

that she had been advised of her rights, that she waived her rights and that she would talk to the officers. She admitted that she had stabbed the victim but said that the victim had attacked her with a knife and that she had killed the victim in self-defense. She had been cut on the hand, she said, when she tried to wrest the knife from the victim. She told the officers that she had taken some money from the victim's purse and that she wished to give it back. The money, she said, was at her father's house. At the request of the officers, she repeated the story on tape.

Defendant was arrested for the murder and taken by the officers to a juvenile detention center in Portland. During the trip, she called her father and her boyfriend on the officers' car phone and, during the conversations, made inculpatory statements. She told the officers that she had kicked the victim in the head, because she was still alive and was calling her names. The officers told defendant's father of the arrest and the charges and retrieved some of the money that defendant had taken from the victim.

The officers conducted further investigations on the basis of defendant's statements and returned to the juvenile detention center to talk to her. They told her that her story was not consistent with other facts, and she agreed to give another statement. She insisted that it be recorded so she would not have to repeat it. In the statement she said that she went to the victim's house to rob her and decided to kill her with a knife that she found in the kitchen so that the victim could not identify her.

In her first assignment, defendant argues that the court erred when it ruled that her waiver of rights and her statements were voluntary. She does not argue that the officers failed to advise her properly of her rights or that they acted improperly or made threats or promises to her. Her argument is essentially that the circumstances of her life and those attendant on the interviews made her statements involuntary. Specifically, she contends that she was 15 years old, had had a "horrendous childhood," had lived on the street for three years, was a prostitute, was addicted to drugs, was injured and in pain, was still under the influence of the medication given her at the hospital, was isolated from her

father and had confessed because she thought she was "supposed to."

■ The test for voluntariness under Article I, section 12, of the Oregon Constitution is whether, under the totality of the circumstances, the waiver of rights and the confession were the product of an essentially free, unconstrained and informed choice or whether the accused's capacity for self-determination was critically impaired. *State v. Vu,* 307 Or 419, 770 P2d 577 (1989). In reviewing the trial court's decision, we are bound by its findings but make our own determination as to the constitutional significance of those facts. *State v. Farmer,* 65 Or App 336, 671 P2d 757 (1983).

■ The court made extensive findings on defendant's motion, and she does not challenge them. Other than listing selected bits of her social history and the circumstances surrounding the interrogation as things to consider, defendant does not explain how her will was overborne or her capacity for self-determination critically impaired.[2] We conclude that her oral and written waiver, as well as the statements, were voluntary. The court did not err in denying defendant's motion to suppress. We also conclude that the Fifth Amendment of the United States Constitituion was not violated. *See Colorado v. Connelly,* 479 US 157, 107 S Ct 515, 93 L Ed 2d 473 (1986).

■ In her second assignment, defendant contends that the court erred by allowing the investigating officer to testify that the reason he took defendant from her father's home to question her was that, in his experience, juveniles are less likely to admit criminal activity in front of their parents. She argues that the testimony is tantamount to an expression of opinion that defendant was telling the truth after being separated from her father. Such an opinion, she argues, is not admissible. *State v. Isom,* 306 Or 587, 761 P2d 524 (1988); *State v. Middleton,* 294 Or 427, 657 P2d 1215 (1983). The testimony was offered to explain why the investigation was conducted as it was. Although there may be a strained inference that juveniles tell the truth when not in the presence of their parents, it is unlikely that the jury would attach the

---

[2] In addition to reviewing the facts as found by the trial court, we have listened to the tape recordings of defendant's statements, at her suggestion.

significance to the testimony that defendant suggests. Admission of the testimony was not error.

■    In the final assignment, defendant contends that the sentence was unlawful. She is correct. The court merged the three convictions and sentenced her on one to life imprisonment *without the possibility of parole.* ORS 161.620 provides:

> "Notwithstanding any other provision of law, a sentence imposed upon any person remanded from the juvenile court under ORS 419.533 shall not include any sentence of death or life imprisonment without the possibility of release or parole * * *."

Conviction affirmed; judgment modified to delete "without the possibility of parole."