Argued and submitted December 22, 2009, affirmed July 28, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## NICOLE ELAINE TANNER,
*Defendant-Appellant.*

Marion County Circuit Court
07C43289; A138575

236 P3d 775

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction on one count of delivery of marijuana for consideration. ORS 475.860(2).[1] Defendant assigns error to the trial court's denial of her motion to suppress evidence obtained after a traffic stop. She argues, first, that all evidence obtained in violation of Article I, section 9, of the Oregon Constitution as a result of an unlawful extension of the duration of a lawful traffic stop should have been suppressed.[2] In addition, defendant argues that her confession of her intent to sell the marijuana should have been suppressed because it was obtained in violation of Article I, section 12, of the Oregon Constitution as the result of allegedly coercive police tactics that occurred after she received *Miranda* warnings.[3] For the following reasons, we affirm.

█ █ We review the trial court's denial of defendant's motion to suppress for errors of law. ORS 138.220. The trial court's findings of historical fact are binding on appeal if there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). "If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id.* The following relevant facts are either undisputed or are consistent with the trial court's findings of fact and its ultimate conclusion.

On March 17, 2007, at about 1:15 a.m., a Salem police officer, Cooper, responded to a dispatch call regarding

---

[1] ORS 475.860 provides, in part:

"(1) It is unlawful for any person to deliver marijuana.

"(2) Unlawful delivery of marijuana is a:

"(a) Class B felony if the delivery is for consideration.

"(b) Class C felony if the delivery is for no consideration."

[2] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[3] Article I, section 12, provides, in part, "No person shall * * * be compelled in any criminal prosecution to testify against himself."

suspicious persons who reportedly had been ringing the doorbell of a residence on a dead end street for approximately three minutes. While awaiting backup near the residence, Cooper stopped defendant after observing a traffic violation. During the stop, a second officer, Beal, arrived on the scene and assisted Cooper in investigating defendant's two passengers. That investigation precipitated the arrest of the front seat passenger, which, in turn, led Cooper to see what he suspected was a used methamphetamine pipe lying on the floorboard of the front passenger seat. Following that observation, defendant consented to a search of her car, which confirmed that it was a methamphetamine pipe on the floorboard and revealed 24 individual baggies of marijuana in the car's console. Cooper also discovered four bindles of cocaine in a backpack belonging to the front seat passenger.

While Cooper and Beal were cataloging all the evidence that had been found, Beal told Cooper that defendant was the alleged victim in a domestic violence case that was set to go to trial the next week; Beal was the investigating officer on that case. Cooper then spoke again with defendant to obtain her statement regarding the marijuana; he began by providing defendant with *Miranda* warnings. Cooper told defendant that, if she lied to him while he took her statement for his report and it was proved that she had lied, someone in her pending case could potentially find that false information and bring it up in court and that the person charged in that case might not be convicted. Defendant admitted that she had the marijuana with the intent to sell it. She stated that she had purchased the marijuana from the front seat passenger, who had told her that selling drugs was an easy way to make money. Defendant also stated that it was her first attempt at selling marijuana, that she believed she could get $20 for each individual baggie, and that she had not sold any of the marijuana because she had not yet had the chance to do so.

Defendant was ultimately indicted on one count of delivery of marijuana for consideration. She moved to suppress certain evidence found during the stop and argued that the stop of her car was not justified by reasonable suspicion that a crime had been or was about to be committed.[4] Rather,

---

[4] Throughout the proceedings before the trial court, defendant did not cite any specific provisions of the Oregon Constitution. However, she presented arguments

defendant contended that the only justification for the stop was the observed traffic violations. Therefore, she contended that, based on the facts, "[t]he *scope* of the stop immediately exceeded the *reason* for the initial stop and continued to exceed the *reasons* for the additional stop for quite some time." (Emphases added.) Defendant later reiterated that "[t]he *scope* of the stop was unreasonably extended by the officer when he went after the passengers[.]" (Emphasis added.) Defendant also argued that her consent to search her car was not freely and voluntarily given and that the circumstances gave rise to a coercive atmosphere that required that she be given *Miranda* warnings before her consent to search. Finally, defendant also argued that any statements she made to the officers after she received the *Miranda* warnings were not voluntary; rather, defendant contended that those statements were coerced by Cooper's comments about the pending domestic violence case in which defendant was the alleged victim.

The trial court ultimately denied defendant's motion to suppress evidence in its entirety. In its letter opinion, the trial court reasoned, "Although the appellate courts have in recent cases * * * found that contacting passengers in traffic stop cases could result in suppression of evidence, those cases are distinguishable from the facts in this case." Defendant was convicted following a bench trial.

■ On appeal, defendant challenges the admissibility of certain evidence under Article I, sections 9 and 12, of the Oregon Constitution.[5] Under Article I, section 9, she argues that "all evidence obtained was inadmissible because the officer impermissibly extended the *duration* of the traffic stop without reasonable suspicion of criminal activity." (Emphasis added.) Defendant contends that all evidence and statements obtained by Cooper "flowed directly from the unlawful extension of the stop" and that the state failed to establish that any portion of the evidence was obtained "independent

___

based on Oregon case law that sufficiently identified to the trial court the Oregon constitutional provisions at issue in this case.

[5] Defendant also challenges the evidence under the Fourth Amendment to the United States Constitution. As noted by the state, defendant did not challenge the disputed evidence on federal grounds before the trial court. Therefore, that challenge is unpreserved, and we do not consider it. *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) (discussing preservation).

of the illegality." In particular, defendant contends, in essence, that neither her consent nor the *Miranda* warnings were intervening events that removed the taint of illegality from the resulting evidence. Defendant also argues that, even if she was not impermissibly detained, under Article I, section 12, her confession that she possessed the marijuana with intent to sell was not voluntarily made. Defendant does not renew her argument that she should have been given *Miranda* warnings before her consent to search her car.

■ We begin by determining whether defendant has preserved one of the claims of error she now asserts—that the trial court erred in admitting evidence obtained because Cooper impermissibly extended the *duration* of the stop of defendant. As we recognized in *State v. Walker*, 234 Or App 596, 606, 229 P3d 606 (2010), "we have a prudential obligation to determine *sua sponte* whether a contention has been preserved for appellate review. That obligation arises from considerations of jurisprudential comity and procedural fairness." (Citations omitted.) To preserve a claim of error, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

■ Defendant's arguments below focused solely on an impermissible extension of the *scope* of the stop. Defendant's focus on an extension—or, more aptly, an expansion—of the subject matter of the stop is made especially clear by her contention to the trial court that "[t]he *scope* of the stop immediately exceeded the *reason* for the initial stop and continued to exceed the *reasons* for the additional stop for quite some time." (Emphases added.) At no point did defendant engage the trial court, or the prosecutor, in a discussion regarding an impermissible extension of the *duration* of the stop.

In *State v. Amador*, 230 Or App 1, 8, 213 P3d 846 (2009), *rev den*, 347 Or 533 (2010), the defendant raised two challenges on appeal to the lawfulness of a search that occurred during a traffic stop: (1) "that the officer unlawfully expanded the scope of the traffic stop by asking about drugs

or weapons without reasonable suspicion" and (2) "that the officer unlawfully extended the duration of the stop." We rejected the defendant's first legal theory on its merits and then concluded that the defendant's second legal theory was unpreserved. In particular, as to that second legal theory, we held:

"Here, of the two discrete legal theories defendant advances on appeal, he presented only one to the trial court. Defendant engaged the prosecutor and the trial court in an extensive colloquy regarding the lawfulness of the officer's actions, including an extended discussion of our holding in [*State v.*] *Amaya*[, 176 Or App 35, 29 P3d 1177 (2001), *aff'd,* 336 Or 616, 89 P3d 1163 (2004),] and the proper construction of ORS 810.410. What defendant did not do, however, was argue that the officer had unlawfully extended the *duration* of the encounter. Defendant's characterization of the officer's questions as 'basically bootstrapping a traffic stop into a fishing expedition for drugs or weapons' aptly summarizes the breadth of defendant's argument to the trial court, an argument that dealt exclusively with the *scope* of the officer's questions, not the *duration* of the encounter. Because defendant failed to preserve his argument that the officer unlawfully extended the duration of the encounter, we do not address the merits—if any—of that argument."

*Id.* at 9-10 (third emphasis added; other emphases in original; footnote omitted).

In this case, we conclude, much as we did in *Amador*, that defendant failed to preserve her argument that Cooper unlawfully extended the *duration* of the stop. That failure is particularly significant when it could have affected the evidentiary record of the hearing on the motion to suppress. A more particular and time sensitive chronology of events may be necessary to evaluate contentions about extension of the duration of a stop, as opposed to its scope. Therefore, because defendant failed to articulate to the trial court her position that Cooper unlawfully extended the duration of the stop, we do not address the merits of that argument for the first time on appeal.

We turn to defendant's sole remaining argument, that her confession that she possessed the marijuana with

intent to sell was not voluntarily made as required under Article I, section 12. In particular, defendant asserts that (1) Cooper used the information regarding the pending domestic violence case to "instill fear in defendant that if she was not completely honest with him, that the assailant in the assault case would not be convicted"; (2) "[i]t was only after Cooper used [that tactic] that defendant admitted that she intended to sell the marijuana"; and (3) "[t]he state did not present any evidence that defendant's statements were not made out of fear of retribution from the offender in the assault case once he was freed." Therefore, defendant contends that the state did not meet its burden to prove that her statements were voluntarily made.

The state maintains that defendant's confession, in fact, was voluntary. The state asserts that, "[n]ot only had [defendant] been advised of her *Miranda* rights, but [Cooper] used no force and made no threats or promises to gain her admission." Rather, "Cooper's truthful explanation to defendant that any lie she told him during this investigation might be used against her in an upcoming unrelated trial was neither a promise nor a threat, and it by no means compelled her to answer any question or make any admission." For the reasons that follow, we agree with the state that the confession was voluntary.

■■  As noted above, Article I, section 12, provides that no person may be "compelled in any criminal prosecution to testify against himself." Under that constitutional provision, the state has the burden to prove, by a preponderance of the evidence, that any admissions or confessions by a defendant were voluntarily made. *See, e. g., State v. Stevens*, 311 Or 119, 135-37, 806 P2d 92 (1991); *State v. Goree*, 151 Or App 621, 631, 950 P2d 919 (1997), *rev den*, 327 Or 123 (1998). A defendant's admissions " 'may be suppressed as involuntary either because they were the product of coercion or because the defendant's *Miranda* rights were violated.' " *State v. Breazile*, 189 Or App 138, 143, 74 P3d 1099 (2003) (quoting *State v. Gable*, 127 Or App 320, 324, 873 P2d 351, *rev den*, 319 Or 274 (1994)). Here, defendant has challenged the voluntariness of her confession on the basis that it was compelled out of fear—

*i.e.*, that it was coerced; she does not argue that the confession should be suppressed because her *Miranda* rights were violated.

Voluntariness requires that " 'neither duress nor intimidation, hope nor inducement caused [the] defendant to' confess." *State ex rel Juv. Dept. v. Deford*, 177 Or App 555, 569, 34 P3d 673 (2001) (quoting *State v. Spanos*, 66 Or 118, 120, 134 P 6 (1913)) (alteration in *Deford*). "The test for voluntariness under Article I, section 12, * * * is whether, under the totality of the circumstances, the waiver of rights and the confession were the product of an essentially free, unconstrained and informed choice or whether the accused's capacity for self-determination was critically impaired." *State v. Burks*, 107 Or App 588, 592, 813 P2d 1071, *rev den*, 312 Or 151 (1991). Threats, promises, inducements, and similar overreaching by the police have consistently led to suppression of a defendant's resulting statements and confessions; by contrast, in the absence of police overreaching, challenges to the voluntariness of a defendant's statements or confessions have consistently failed. *Deford*, 177 Or App at 569-70. Under Article I, section 12, "police overreaching is an essential predicate of a challenge to the admissibility of a statement or a confession as involuntary." *Id*. at 572.

"In reviewing the voluntariness of a defendant's statements, we are bound by the trial court's findings of historical fact, but must assess independently the ultimate legal determination of voluntariness." *State v. Acremant*, 338 Or 302, 324, 108 P3d 1139, *cert den*, 546 US 864 (2005). Helpful in guiding our assessment here are *State v. Linn*, 179 Or 499, 173 P2d 305 (1946), and *State v. Tenbusch*, 131 Or App 634, 886 P2d 1077 (1994), *rev den*, 320 Or 587, *cert den*, 516 US 991 (1995). In *Linn*, the Oregon Supreme Court held that the defendant, who was prosecuted for attempted rape, was influenced to execute a confession by "the deliberate employment of inducements and threats" and that "the receipt in evidence of that * * * confession was error since it was not shown to have been voluntary." 179 Or at 514. The court noted that the circumstances in that case constituted neither

*"a mere adjuration to tell the truth, nor a mere statement that it would be better to tell the truth. The inducements*

*went much further and were calculated to induce a confession of guilt.* In addition to the specifically undenied testimony of the defendant that if defendant did it 'the hard way' they would fight him to the last inch, the testimony of the officers themselves discloses a subtle attempt to instill in the mind of the defendant (1) fear of a seven year sentence and of official hostility if he refused to confess and (2) expectation of leniency if he admitted the crime."[6]

*Id.* at 512-13 (emphasis added).

We reached the opposite conclusion in *Tenbusch.* There, the defendant had contended that his obligation to take a polygraph and be truthful about his sexual history, on penalty of possible revocation of his probation, rendered his statements involuntary. 131 Or App at 640.[7] We noted that the privilege against self-incrimination found in Article I, section 12, and the Fifth Amendment to the United States Constitution is not self-executing and must be claimed or be deemed lost. *Id.* at 641. We stated:

"In this case, the conditions of defendant's probation require that he complete sexual offender treatment and be honest about his sexual history. Although the latter condition is more specific than the condition in [*Minnesota v.*] *Murphy,* [465 US 420, 104 S Ct 1136, 79 L Ed 2d 409 (1984),] requiring *truthfulness* 'in all matters,' the overriding focus of both conditions is on truthfulness. As in *Murphy,* defendant's probation is conditioned on not making false statements; thus, the conditions represent the authority of the state to revoke defendant's probation if he refuses to take the polygraph or if he answers questions untruthfully. However, the conditions neither expressly nor implicitly foreclose his right to object to making self-incriminating statements. Accordingly, the conditions of defendant's probation do not force him to choose between making incriminating statements and jeopardizing his conditional liberty. His third option, not foreclosed by those

---

[6] To instill "fear of a seven year sentence," an officer mentioned to the defendant another case, where another man, who had been involved with the same underage female victims, had been sentenced to seven years in prison. *Linn,* 179 Or at 504.

[7] The defendant, who was not given *Miranda* warnings, did not contend that he was entitled to such warnings before being asked about his sexual history. 131 Or App at 640 n 4.

conditions, is to invoke his constitutional right against compelled self-incrimination.

"We conclude that the conditions of defendant's probation do not, by their terms, constitute a threat by the state to penalize defendant for invoking the privilege against compelled self-incrimination. As noted by the state, defendant does not contend, and the trial court did not find, that defendant was ever told or led to believe that his probation could be revoked if he exercised the privilege. Under the rule articulated in *Murphy*, the threatened penalty must be specifically addressed to the *exercise of the privilege against self-incrimination* for defendant to claim that he was compelled to speak. Because no such threat was made in this case, defendant's failure to exercise the privilege in a timely manner precludes him from now claiming that his answers were compelled in violation of Article I, section 12, and the Fifth Amendment."

*Id.* at 644-45 (footnote omitted; emphases in original).

Returning to the case at hand, Cooper's testimony at the hearing shows only that the police conduct at issue involved a mere adjuration to tell the truth along with a truthful—not a fraudulent—comment regarding the possible consequences of lying; the conduct did not amount to a threat, subtly implied or otherwise, directed at the exercise of defendant's privilege against self-incrimination. Defendant was not compelled to speak. Rather, she was encouraged that, if she spoke, she should do so truthfully. Cooper testified regarding his comments to defendant about the pending domestic violence case as follows:

"[Defense counsel:] Did you ever discuss that with [defendant] about not consenting or not cooperating with you and how that might affect her [pending] case?

"* * * * *

"[Cooper:] * * * During the time of talking to [defendant], taking her statement about what her—the marijuana she had claimed is when I spoke to her about her pending case. * * *

"* * * * *

"[Defense counsel:]   Did you tell her that if she didn't be truthful and cooperate with you it could go bad against her in court?

"[Cooper:]   I stated to her that if she were to lie to me now while taking her statement for my report and it was proved that she was lying to me on my case, someone in her case where she was a victim of a crime, another attorney for, say, the suspect—the defendant in that case could use—could potentially find that—basically false information that she's giving to me and bring that up in her court case with that other defendant.

"* * * * *

"[Defense counsel:]   Did you tell her that maybe that person could be released?

"[Cooper:]   I don't recall saying that. Maybe not convicted of the crime. The exact detail I don't—I can't recall.

"[Defense counsel:]   Okay. But was it obvious that you were explaining to her that if she didn't cooperate and be truthful to you it could result in the person who was in jail who had beat the holy out of her could be released? Did you leave that impression with her?

"[Cooper:]   I believe—I don't know if the way he's stating it—

"The Court:   Well, how do you think you stated it?

"[Cooper:]   Basically that she needed to be honest and truthful to me in this police report because at that point I knew that * * * she was going to be receiving a delivery charge—a substantial charge, and that information might become known to the defendant from the—

"* * * * *

"[Cooper:]   And that—my report, if I wrote my statement where it appeared that she was lying and obvious to someone that she was lying—

"* * * * *

"[Cooper:]   —it might come—her credibility as a victim and her statements as a victim—not knowing any of the exact details of her case—

"* * * * *

"The Court:  Anyway, so you just made comments that could affect that other case if you lie to me in this case because they're going to get copies of these reports because the State's going to have to tell them you've been arrested?

"[Cooper:]  Yes.

"The Court:  And if they don't, that could affect their case?

"[Cooper:]  Yes[.]"

As revealed by Cooper's testimony, his comments about the pending domestic violence case addressed only the possible consequences of *lying* to him in any statements for his report; his comments did not address any consequences of *not speaking* to him in the first instance. Indeed, before her confession, defendant had been advised of her *Miranda* rights, which include the right to remain silent.

Although we are sensitive to defendant's status as the alleged victim in a domestic violence case, that status does not transform all police comments related to her pending case into inappropriate threats or police overreaching. Because there were no coercive tactics used by the police in this case, the trial court did not err in admitting defendant's confession that she possessed the marijuana with intent to sell.

Affirmed.